FABIO E. MARINO (SBN 183825)
fmarino@polsinelli.com
BARRINGTON DYER (SBN 264762)
bdyer@polsinelli.com
NITIN GAMBHIR (SBN 259906)
ngambhir@polsinelli.com
TERI H.P NGUYEN (SBN 267498)
thpnguyen@polsinelli.com
POLSINELLI LLP
1661 Page Mill Road, Suite A
Palo Alto, CA 94304
T:  650-461-7700
F:  650-461-7701

Attorneys for Defendant and
Counterclaim-Plaintiffs
RADWARE, INC. and RADWARE, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| F5 NETWORKS, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RADWARE, INC.,<br><br>　　　　Defendant. | Case No. 3:17-cv-03166-VC<br><br>**RADWARE, INC.'S AND RADWARE, LTD.'S OPPOSITION TO F5 NETWORKS, INC.'S MOTION FOR CLARIFICATION REGARDING AMENDED CONTENTIONS DEADLINES OR, IN THE ALTERNATIVE, MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**<br><br>Date:　December 6, 2018<br>Time:　10:00 a.m.<br>Judge:　Hon. Vince Chhabria<br>Ctrm:　4, 17th Floor |
| RADWARE, INC. and RADWARE, LTD.,<br><br>　　　　Counterclaim-Plaintiffs,<br><br>　　v.<br><br>F5 NETWORKS, INC.,<br><br>　　　　Counterclaim-Defendant. | |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................ 2

III. LEGAL STANDARD ....................................................................................................... 5

IV. ARGUMENT .................................................................................................................... 6

    A. Rule 3-6 Allows For Amendment Only "By Order Of The Court Upon A Timely Showing Of Good Cause" ............................................................ 6

    B. No Cause For Amendments .................................................................................. 8

        1. No Source Code Citations For The '955 Patent .......................................... 8

        2. Amendments Contain New Theories ........................................................... 9

        3. F5 Did Not Act Diligently ......................................................................... 10

            a. No Diligence Seeking Inspection Of Source Code (*i.e.*, Basis For Amendment) ............................................................ 11

            b. No Diligence In Seeking Amendment Following Inspection .................................................................................... 13

        4. Because F5 Has Not Shown Good Cause, There is No Need to Address Prejudice ......................................................................... 15

V. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acer, Inc. v. Tech. Props.*,
    2010 WL 3618687 (N.D.Cal. Sept. 10, 2010) ...........................................................................15

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 12-CV-0630-LHK PSG, 2013 WL 3246094 (N.D. Cal. June 26, 2013) ..........................15

*Atmel Corp. v. Info. Storage Devices Inc.*,
    No. 95–cv–1987 FMS, 1998 WL 775115 (N.D.Cal. Nov. 5, 1998) ..........................................7

*CBS Interactive, Inc. v. Etilize, Inc.*,
    257 F.R.D. 195 (N.D. Cal. 2009) ..............................................................................................6

*Cisco Sys., Inc. v. Teleconference Sys., LLC.*,
    No. 09-CV-01550 JSW (NC), 2012 WL 9337627 (N.D. Cal. June 11, 2012) ....................7, 13

*Dynetix Design Solutions Inc. v. Synopsys Inc.*,
    2012 WL 6019898 at *2 ..............................................................................................................6

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
    2014 WL 5305906 (Oct. 16, 2014) ..........................................................................................10

*Good Technology Corp. v. Mobileiron, Inc.*,
    No. 12–cv–5826, 2015 WL 3866019 (N.D.Cal. May 4, 2015) .................................................6

*GoPro, Inc. v. 360Heros, Inc.*,
    No. 16-CV-01944-SI, 2017 WL 1278756 (N.D. Cal. Apr. 6, 2017) .......................................13

*Gray v. First Winthrop Corp.*,
    133 F.R.D. 39 (N.D. Cal. 1990) ..............................................................................................11

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
    No. 12-CV-03844-JST, 2013 WL 12178575 (N.D. Cal. Apr. 29, 2013) ................................10

*KlausTech, Inc. v. Google, Inc.*,
    No. 10-CV-05899-JSW (DMR), 2017 WL 4808558 (N.D. Cal. Oct. 25, 2017) ...............12, 13

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
    No. C 08-04567 CW, 2009 WL 3353306 (N.D. Cal. Oct. 16, 2009) ......................................10

*Monolithic Power Sys., Inc. v. Silergy Corp.*,
    No. 14-1745-VC (KAW), 2015 WL 5440674 (N.D. Cal. Sept. 15, 2015) ..............................11

*O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ......................................................................................5, 6, 15

# **TABLE OF AUTHORITIES CONTINUED**

**Page(s)**

**Cases**

*Radware, Ltd. v. F5 Networks, Inc.*,
   No. 13-CV- 02024-RMW (N.D. Cal.) ............................................................................... *passim*

*Synopsys, Inc. v. ATopTech, Inc*,
   No. 13-CV-02965-MMC (DMR), 2016 WL 6610344
   (N.D. Cal. Nov. 9, 2016) ........................................................................................................ 9

*TC Heartland v. Kraft Foods Group Brands LLC*,
   137 S.Ct. 1219 (2017) ....................................................................................................... 2, 12

*Unwired Planet, LLC v. Apple Inc*,
   No. 13-CV-04134-VC, 2014 WL 5396735 (N.D. Cal. Oct. 23, 2014) ............................ 5, 6, 8

*Vasudevan Software, Inc. v. Microstrategy, Inc.*,
   No. C 11-06637 RS, 2012 WL 12920633 (N.D. Cal. Nov. 21, 2012) .................................... 9

*Verinata Health, Inc. v. Sequenom, Inc.*,
   No. C 12-00865 SI, 2014 WL 789197 (N.D. Cal. Feb. 26, 2014) ................................ 6, 13, 15

*Word to Info Inc. v. Facebook Inc.*,
   No. 15-CV-03485-WHO, 2016 WL 6276956 (N.D. Cal. Oct. 27, 2016) .............................. 12

**Other Authorities**

L.R. 3-1(i) and (h) ........................................................................................................................ 8

L.R. 3-6(c) .................................................................................................................................. 14

L.R. 3-6 ........................................................................................................................... 2, 5, 6, 7

**I.     INTRODUCTION**

F5 Networks, Inc.'s (F5 or Plaintiff) Motion for Clarification Regarding Amended Contentions Deadlines Or, In the Alternative, Motion for Leave to Amend Infringement Contentions ("Motion") should be denied.

It's been over two years since F5 served its infringement contentions. In that time the case has been transferred to this district, but at no point has discovery been stayed as to F5's infringement claims against Radware. Now—on the last day to seek leave to amend its contentions—F5 seeks to modify its infringement theories for three asserted patents.[1] However, the proposed amendments lack good cause because they (1) are based on long-available technical documents and public information instead of confidential source code; (2) contain new, previously undisclosed theories; and (3) are made with no showing of diligence.

First, F5 contends good cause exists to amend its infringement theories for the '955 patent based on recently reviewed source code, yet the amended claim chart for the '955 patent contains *no source code citations*. So there is no basis for these amendments. F5's alleged reliance on source code is pretext.

Second, F5 asserts that it is simply adding details to previously disclosed infringement theories, but F5's amended contentions indeed contain new theories. For example, F5 now contends that the preamble of the '473 patent is limiting (after conceding otherwise in the JCCS), and charts claim limitations that were previously left blank. In addition, F5 accuses new instrumentalities of infringement, doubling the number of accused products. These include previously unaccused models of Radware's Alteon device, and previously unaccused versions of Radware's AppWall product.

Third, F5's proposed amendments lack the diligence required in this district. While courts tend to allow up to three months for amendment, F5 waited more than *a-year-and-a-half*

---

[1] U.S. Patent Nos. 8,676,955 ("'955 Patent"), and 7,472,413 ("'413 Patent"), 6,311,278 ("'278 Patent") ("Asserted F5 Patents").

(after the case transferred) to request inspection of source code, and an additional *six months* to seek amendment, for a total of two years.

Finally, F5 seeks clarity from the Court as to whether it is even required to show good cause for its amendment, or whether it may amend as a matter of right under the scheduling order. Not only is F5's interpretation contrary to Patent Local Rule 3-6, which permits amendment only for a timely showing of good cause, but its interpretation of the scheduling order is implausible. The parties' prior litigation in this District similarly set forth a deadline to amend contentions, and Judge Whyte denied leave because F5 did not diligently disclose its theories. So this is not F5's first encounter with the local rules of this district, or the first time F5 has attempted to amend its contentions without showing diligence.

Because the proposed amendments contain new, previously undisclosed theories; are based on long-available technical documents and public information instead of confidential source code; and were made without diligence, F5's motion for leave should be denied.

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

**2016:** This case began in the Western District of Washington, when F5 filed its initial Complaint in April of 2016, alleging infringement of the Asserted F5 Patents. (Dkt. 1). F5 served initial infringement contentions shortly after on July 18, 2016. (Dkt. 163-2). That same day, the Washington court issued a Protective Order specifying that "[a]ny source code produced in discovery shall be made available for inspection." (Dkt. 34 at § 8.3). In December of 2016, the Washington court issued a Scheduling Order setting claim construction briefing to be completed by May 2017. (Dkt. 57).

**2017:** Nine months into the litigation, F5 served its first set of Request For Productions in February of 2017. (Dkt. 163-3). In May of 2017, the parties completed claim construction briefing (Dkt. 79, 81, 87, and 90) and, as a result of the Supreme Court's decision in *TC Heartland v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1219 (2017), agreed to transfer the case to the Northern District of California. (Dkt. 96). The case registered here on Northern District's docket on June 2, 2017. (Dkt. 98).

The Court held a case management conference telephonically with the parties in July of 2017. Dkt. 122. Prior to the conference, the parties submitted a Case Management Statement notifying the Court of the parities' earlier agreement that Radware documents produced in the prior litigation, *Radware, Ltd. v. F5 Networks, Inc.*, No. 13-CV- 02024-RMW (N.D. Cal.) ("*Radware I*"), are deemed produced in this litigation. (Dkt. 120 at 5). Radware's production included five-thousand pages of source code and thousands of pages of technical documents on the accused Alteon products—all of which were produced prior to this lawsuit. *See* concurrently filed Declaration of Barrington E. Dyer ("Dyer Decl.) at ¶3.

Within days of the case transfer, F5 filed a motion to stay Radware's counterclaim for infringement of U.S. Patent No. 9,231,853 ("'853 Patent") pending resolution of an IPR by F5. (Dkt. 101). Radware opposed the stay and urged that discovery proceed as to both parties' patents. (Dkt. 116). Given F5's request to halt Radware's claims, the Court asked the parties whether "the entire case should be stayed pending that review". (Dkt. 131). F5 urged that "the case should proceed with respect to F5's patent infringement claims", because they were not subject to an IPR. (Dkt. 133 at 1-2). Radware on the other hand, advised that neither parties' claims be stayed, but that to the extent the Court was inclined to stay Radware's counterclaim, that it should stay the entire case. (Dkt. 134 at 3). The Court stayed "all substantive motion practice in the case" but instructed that *"[w]hile the PTAB proceedings are pending, however, the parties may proceed with discovery relating to F5's claims against Radware, and any motions relating to that discovery may be filed."* (Dkt. 136 (emphasis added)). Unequivocally, no stay was thus imposed as to F5's claims against Radware.

**2018:** In January of 2018, F5 made its first request to inspect Radware's source code in this litigation. (Dkt. 163-4 at 3-4; Dyer Decl., Ex. A at 5). Radware's counsel responded that it would coordinate to make the code available pursuant to the Protective Order, and by February 2nd, 2018, Radware confirmed that the source code was available for inspection.[2] Days before,

---

[2] Dkt. 163-4 at 2-3 ("We have the source code available for your review per the Protective Order in the case. Let me know when you plan to inspect it and we can arrange for it in our SF office").

Radware also produced more technical documents (Dyer Decl. at ¶ 4). F5 responded three months later to ask what source code was available for inspection. (Dyer Decl., Ex. A at 2-3 (May 1, 2018 Reply to Feb. 1, 2018 Email)). Radware indicated that the current version of the Alteon code, version 32.0, was available for inspection along with AppWall version 7.2.1.1. (Dyer Decl., Ex. A at 1 and Ex. B). Without raising any objection, F5 scheduled inspection of the code May 22-23rd. (Dyer Decl., Ex. C at 1-2). Before F5's inspection, Radware made a final production of documents, including Release Notes and User Guides. (Dyer Decl. at ¶ 4). Radware also followed up in May with a letter informing F5 of several deficiencies in its infringement contentions from 2016. (Dkt. 163-7). F5 countered that it believed Radware's production to be inadequate, but did not specify what additional discovery it still needed. (Dkt. 163-5). Importantly, despite having already reviewed Radware's source code, F5 neither identified nor requested printouts of the source code files. (Dyer Decl. at ¶ 5, Ex. D).

Around the same time in May, the USPTO confirmed the validity of several claims of the Radware '853 patent. The parties contacted the Court regarding the resolution of the IPR, and requested a case management conference to address the stay against Radware's counterclaims. (Dkt. 140). The Court scheduled a conference for June 26th and directed the parties to submit a proposed case schedule. (Dkt. 144). Following the Court's instructions, the parties submitted a proposal which provided that amended infringement and invalidity contentions be due by August 6th and September 6th respectively, and that fact discovery close January 2019. (Dkt. 142-1 at 2). The Court subsequently adopted a schedule setting October 1st and 31st as the deadlines for amended infringement and invalidity contentions, and setting April 4, 2019, as the close of fact discovery. (Dkt. 147 at 2).

On September 6th, only four weeks before the October 1st deadline to amend infringement contentions, F5 requested inspection of the same code it had inspected *back in May*, and requested additional versions of the AppWall source code, including versions 5.8.1 and 7.3.1. (Dkt. 163-6 at 3). Per F5's request, the inspection would take place beginning September 24th— a week before the deadline to amend. (Dkt. 147). Radware's counsel explained the intervening

Jewish high holidays (Radware's headquarter are in Israel) created some challenges in securing the additional versions of the code on short notice. (Dkt. 163-6 at 3). So Radware agreed to a stipulation amending the case schedule to account for any delay in coordinating inspection of the additional source code during the Jewish holidays. (*Id*. at 2). F5 indicated that it was indisposed and unable to perform inspection until mid-October. (*Id*.). So the parties agreed to an amendment of the scheduling order. (Dyer Decl., Ex. D at 1). Critically, in stipulating to the new schedule, Radware reminded F5 of the need for good cause to amend contentions and made clear that Radware was not stipulating that F5 had good cause. (*Id*. ("the parties are still subject to Patent Local 3-6, and therefore, must still show good cause for amending contentions")). The parties then submitted a joint stipulation extending the final date for amended infringement and invalidity contentions to October 29th and November 23rd which the Court adopted. (Dkt. 161).

On October 18th, at the conclusion of the second source code review, F5 identified and requested source code printouts for the *first time*, including printouts from the source code it had reviewed back in May, (Dyer Decl. at ¶ 6). Radware overnighted hardcopies of the selected code on October 22nd which were received by F5 on October 23rd. (Dyer Decl., Ex. E and Mot. at 5). F5 subsequently served near final copies of its amended contentions on October 26th, and filed its Motion on October 29th. (Mot. at 7, fn. 1).

### III.  LEGAL STANDARD

"Patent Local Rule 3-6 allows the parties to amend their infringement contentions only 'by order of the Court upon a timely showing of good cause.'" *Unwired Planet, LLC v. Apple Inc*, No. 13-CV-04134-VC, 2014 WL 5396735, at *1 (N.D. Cal. Oct. 23, 2014) (J. Chhabria) (citing Patent L.R. 3-6). The burden is on the moving party to show that it acted with diligence in amending its contentions. *O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc*., 467 F.3d 1355 (Fed. Cir. 2006). The local rule provides examples that may support a finding of good cause, such as the "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Patent L.R. 3-6. Thus, the patent local rules are designed "to balance the right to

develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, Inc., 467 F.3d 1355, 1366 (Fed. Cir. 2006). The rules accomplish this by requiring parties to "provide early notice of their infringement…contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *Id.* at 1365–66.

To make a satisfactory showing of good cause, a party seeking to amend its infringement contentions must show that it "acted with diligence in promptly moving to amend when new evidence is revealed in discovery." *O2 Micro*, 467 F.3d at 1363. Moreover, "[t]he party seeking to amend its contentions bears the burden of establishing diligence." *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) (citing *O2 Micro*, 467 F.3d at 1366-67).

If the moving party is able to establish diligence, the Court should then consider prejudice to the non-moving party in determining whether to grant leave to amend. *See O2 Micro*, 467 F.3d at 1368; *CBS Interactive*, 257 F.R.D. at 201; *Verinata Health*, 2014 WL 789197, at *1. However, "[i]f the court finds that the moving party was not diligent in amending its infringement contentions, there is no need to consider the question of prejudice to the non-moving party, although a court in its discretion may elect to do so." *Unwired Planet, LLC v. Apple Inc*, No. 13-CV-04134-VC, 2014 WL 5396735, at *1 (N.D. Cal. Oct. 23, 2014) (J. Chhabria) (*citing Dynetix Design Solutions Inc. v. Synopsys Inc.,* 2012 WL 6019898, at *2). Indeed, "[t]his district's patent rules only work if there are consequences for failing to comply." *Good Technology Corp. v. Mobileiron, Inc.,* No. 12–cv–5826, 2015 WL 3866019, at *1 (N.D. Cal. May 4, 2015) (J. Grewal).

IV. ARGUMENT

    A. Rule 3-6 Allows For Amendment Only "By Order Of The Court Upon A Timely Showing Of Good Cause"

As an initial matter, F5's request for clarification as to whether the Court's scheduling order overrides the need for good cause to amend according to Rule 3-6, is addressed by the Rule itself: "Amendment of the Infringement Contentions…may be made ***only*** by order of the Court

upon a timely showing of good cause." *Id.* (emphasis added). "Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative." *Atmel Corp. v. Info. Storage Devices Inc.*, No. 95–cv–1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998); s*ee also* N.D. CAL. PATENT LOCAL RULES ADVISORY SUBCOMMITTEE REPORT (2008) at 2 (stating that the patent local rules were amended in 2008 to eliminate the concept of "preliminary" contentions that could later be amended "as a matter of right", "in favor of a single round of contentions which can be modified only for good cause" because the preliminary-contention system was widely perceived "as not tying litigants sufficiently to their positions").

According to F5's interpretation of the scheduling order, a party can discover a basis for amendment and then sit and wait to disclose its theories until the deadline to amend. But "[t]his 'wait-and-see' approach defies the spirit of the patent local rules, which is to 'require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'" *Cisco Sys., Inc. v. Teleconference Sys., LLC.*, No. 09-CV-01550 JSW (NC), 2012 WL 9337627, at *4 (N.D. Cal. June 11, 2012) (internal citations omitted). Moreover, F5's assertion that it should be allowed to amend as a matter of right—regardless of good cause—undermines the whole purpose of the 2008 amendment of the Patent Local Rules.

F5's understanding that it can amend without showing good cause is even more remarkable given both it and its counsel are aware from *Radware I* that leave is required *even when the court's scheduling order provides for amended contentions*. In *Radware I*, as here, Judge Whyte's scheduling order set forth a deadline to amend contentions. (*Radware I*, Dkt. 38, 279). But in that case, like here, F5 waited until the deadline to seek leave. (*Radware I*, Dkt. 212). As a result, F5's belated motion to amend was denied. (*Radware I*, Dkt. 294 at 5-8 (Oct. 15, 2015)). So this is not the first time F5 has delayed in disclosing its contentions to Radware. And although six months of fact discovery remained in *Radware I* when the court denied leave, the court found F5's year-long delay too untimely to be diligent. (*Id*. at 7-8). F5's belief that it could amend without showing good cause just because the parties agreed upon a cut-off date to

-7-

seek leave, simply does not withstand scrutiny.

### B. No Cause For Amendments

F5's amended infringement contentions includes three modified claim charts (Ex. 13-15 corresponding to F5's three asserted patents), as well as an amended pleading adding accused instrumentalities, and information regarding F5's alleged damages and willfulness theories (*i.e.*, Patent L.R. 3-1(i) and (h)).  (Dyer Decl., Ex. F (Redline) at 7-8).  F5's amended claim charts add new, previously undisclosed theories that include the addition of readily available public information, supplementation of previously uncharted limitations, and identification of previously unaccused products.

#### 1. No Source Code Citations For The '955 Patent

First, although F5 contends its recent review of source code supports good cause, the amended claim chart for the '955 patent contains no source code citations.  (Dkt. 162-8 at 1).  Also, the '955 patent claim chart has no "HIGHLY CONFIDENTIAL – SOURCE CODE" designation.  (*Id.*).  Instead, F5 adds citations to information publically available and one document produced back in January.  (Mot. at 8 ("With respect to the '955 patent chart, F5 cites to specific sections of a document produced by Radware in January 2018")).  In this regard, F5's claim of good cause without actual source code citations is insufficient.  *See Unwired Planet,* 2014 WL 5396735, at *2 (denying motion for leave).

In *Unwired Planet*, for example, the plaintiff similarly claimed good cause for amending contentions based on recently inspected source code.  But the plaintiff "failed to cite any source code in its infringement contentions or in its opening brief.  Rather, it simply claimed, without any factual support, that the 'throttling' limitation is based on recently-produced [defendant] source code."  *Id*. at *2.  The Court found plaintiff's generalized statement "insufficient to show good cause", particularly when the information on which plaintiff relied in its contention was found in the public domain.  Similarly here, F5 cites no source code in its amended contentions for the '955 patent, and relies predominantly on information publically available (as apparent from added cites to Radware.com URLs):

(Dkt. 162-8 at 1). Of course, supplementation based on long-available public information does not support good cause. *See, e.g.*, *Synopsys, Inc. v. ATopTech, Inc*, No. 13-CV-02965-MMC (DMR), 2016 WL 6610344, at *4 (N.D. Cal. Nov. 9, 2016) (denying amendments based on public information and not tied to source code).

### 2. Amendments Contain New Theories

F5's amended contentions also contain new theories. For the first time, F5 contends that the preamble for each of the independent claims of the '473 patent may be limiting. As such, F5 adds citations to claim limitations that were previously left blank and uncharted. (Dyer Decl. at ¶ 13). F5's does the same for the preamble of independent claims 12, 16, and 23. However, F5 never identified the structure accused of infringing this limitation until now, two-and-a-half years into the litigation. And while F5 disclosed in the parties' May 2017 Joint Claim Construction Statement that the preamble of other asserted patents is limiting, it never disclosed the preamble of the '413 patent may be limiting. (Dkt. 76). Moreover, F5 cites no source code for these newly charted limitations. (*See, e.g.*, Dkt. 162-4 at 3). So there again is no cause for their disclosure now, and no reason why they could not have been disclosed sooner. *See, e.g.*, *Vasudevan Software, Inc. v. Microstrategy, Inc.*, No. C 11-06637 RS, 2012 WL 12920633, at *4 (N.D. Cal. Nov. 21, 2012) ("There is no reason why VSi, upon review of the patent local rules, could not have drafted its claim charts in accordance with its theory of liability"); s*ee also Synopsys,* 2016 WL 6610344, at *4. Indeed, Radware notified F5 of deficiencies in its infringement contentions back in May, but F5 seemed unconcerned with the gaps in its infringement theories.

In addition, F5 accuses new instrumentalities, doubling the number of products accused of infringing the '278 and '413 patents. (Dyer Decl., Ex. F at 3-4). The redline below shows the change in Accused Products from the initial contentions to amended contentions, and reflects

newly added models of the Alteon D and Alteon NG unaccused until now:

More problematic still, the last-minute addition of these models appears to be based on

> Based on information presently available, F5 identifies ~~the following~~<ins>in the corresponding claim charts and below the</ins> Accused Products that it currently believes infringe the F5 Patents:
>
> - <ins>'</ins>413 patent: Radware's <ins>AppWall and AppWall+</ins> products ~~that~~ infringe the '413 patent ~~include~~<ins>, including</ins> at least the following models: AppWall OnDemand Switch ~~1 XL; AppWall OnDemand Switch~~<ins>devices (e.g., 1 XL, VL)</ins>; AppWall Virtual Appliance; Hybrid Cloud WAF Service; ~~Alteon NG 5224; Alteon NG 5208; Alteon NG 6420; Alteon NG 8420; Alteon 5412; Alteon Virtual Appliance; Alteon Virtual Appliance for NFV; and Alteon Virtual Appliance~~<ins>and Alteon platforms with AppWall (e.g., Alteon D-Line Platforms, Alteon NG Platforms, Alteon ADC Platforms, Alteon D-4208, Alteon D-5208, Alteon D-6024, Alteon D-6420, Alteon D-7612, Alteon D-7220, Alteon D-8420, Alteon VA, Alteon VA for NFV, Alteon 5412, Alteon NG 5224, Alteon NG 5208, Alteon NG 6024, Alteon NG 6420, Alteon NG 4408, Alteon NG 8420, Alteon VA</ins> for cloud environment<ins>)</ins>.
> - '278 patent: Radware's <ins>AppWall and AppWall+</ins> products ~~that~~ infringe the ~~'413~~<ins>278</ins> patent ~~include~~<ins>, including</ins> at least the following models: AppWall OnDemand Switch ~~1 XL; AppWall OnDemand Switch~~<ins>devices (e.g., 1 XL, VL)</ins>; AppWall Virtual Appliance; Hybrid Cloud WAF Service; ~~Alteon NG 5224; Alteon NG 5208; Alteon NG 6420; Alteon NG 8420; Alteon 5412; Alteon Virtual Appliance; Alteon Virtual Appliance for NFV; and Alteon Virtual Appliance~~<ins>and Alteon platforms with AppWall (e.g., Alteon D-Line Platforms, Alteon NG Platforms, Alteon ADC Platforms, Alteon D-4208, Alteon D-5208, Alteon D-6024, Alteon D-6420, Alteon D-7612, Alteon D-7220, Alteon D-8420, Alteon VA, Alteon VA for NFV, Alteon 5412, Alteon NG 5224, Alteon NG 5208, Alteon NG 6024, Alteon NG 6420, Alteon NG 4408, Alteon NG 8420, Alteon VA</ins> for cloud environment<ins>)</ins>.

information that was long publically available on Radware's website, as demonstrated by F5 Exhibit 11 (Dkt. 163-11). *But see Finjan, Inc. v. Blue Coat Systems, Inc*., 2014 WL 5305906 * 2  (Oct. 16, 2014) (J. Grewal) (denying leave to add amendments based on public information); *see also Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-CV-03844-JST, 2013 WL 12178575, at *3 (N.D. Cal. Apr. 29, 2013) (finding "request to more than double the number of accused products in this case is unjustified"); *see, e.g., Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.,* No. C 08-04567 CW, 2009 WL 3353306, at *2 (N.D. Cal. Oct. 16, 2009) ("Because O2 Micro was not diligent in seeking leave to amend, the Court does not find good cause for O2 Micro to add these products. O2 Micro had information…Thus, these products could have been included in its March, 2009 Infringement Contentions").

### 3. **F5 Did Not Act Diligently**

Finally, even setting aside the unsubstantiated amendments and new theories, F5's lack of diligence is reason alone to deny leave.  Demonstrating good cause also requires demonstrating diligence: "(1) diligence in discovering the basis for amendment; and (2) diligence in seeking

amendment once the basis for amendment has been discovered." *Monolithic Power Sys., Inc. v. Silergy Corp.*, No. 14-1745-VC (KAW), 2015 WL 5440674, at *2 (N.D. Cal. Sept. 15, 2015). Though F5 alleges the recent discovery of source code evidence supports good cause, but the facts show that F5 was neither diligent in seeking inspection of this code nor in seeking amendment after its inspection.

### a. No Diligence Seeking Inspection Of Source Code (*i.e.*, Basis For Amendment)

During the first two years of this litigation, F5 made no effort to inspect Radware's source code. Perhaps because F5 was already in possession of thousands of pages of Alteon source code and technical documents from *Radware I*, or perhaps because F5 was unmotivated to pursue discovery at the time, F5 took no steps to inspect Radware's source code until 2018. (Dkt. 163-4 at 3-4; Dyer Decl., Ex. A at 5) Insofar as F5 required further code to be produced, it was incumbent on F5 to request an inspection, and then select the portions of code it needed. Indeed, the process of requesting inspection and selecting relevant code files was laid-out in the July 2016 Protective Order (Dkt. 34), and F5 had followed this same process to collect source code in *Radware I*. (*Radware I*, Dkt. 37 at 19). Still, F5 waited until 2018 to even request inspection of Radware's source code in this case. (Dkt. 163-4 at 3-4; Dyer Decl., Ex. A at 5).

Unable to demonstrate "diligence in discovering the basis for amendment", F5 looks to excuse its inaction, and incorrectly alleges that discovery was "suspended" during the first two-years of the case. But that is simply not the case: at no point was discovery stayed as to F5's infringement claims, nor did any case developments foreclose discovery.

F5 first alleges that discovery was "suspended" while the Washington court contemplated Radware's motions to dismiss and transfer. (Mot. at 4). But filing a motion to dismiss or transfer does not foreclose discovery. *See Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 40 (N.D. Cal. 1990) ("Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect."). F5 then says that discovery was "effectively suspended" while the case transferred from Washington to

California. (Mot. at 4). Yet, when the case was transferred on June 2, 2017, it registered on the Northern District's docket within days, and the Court held a case management conference within six weeks, so any interruption from the transfer was minimal. (*See* Dkt. 97, 98, 121).

Even if F5's claim that discovery was "suspended" were true, F5 would still be unable to account for more than a year of inactivity, extending from November 2016 to May 2017—*before* the case transfer—and from July 2017 to January 2018—*after the transfer*.[3] During these periods, no efforts were made by F5 to coordinate inspection of source code, and therefore, no diligence can be demonstrated. *See, e.g.*, *KlausTech, Inc. v. Google, Inc.*, No. 10-CV-05899-JSW (DMR), 2017 WL 4808558, at *4 (N.D. Cal. Oct. 25, 2017) ("The court agrees with Google, and finds that while KlausTech acted diligently in moving to amend, it did not act diligently in discovering the basis for its proposed amendments.") (Denying leave to amend). Of course, "[t]here are many steps [F5] could have taken, short of preparing and serving claim construction charts, that would have helped demonstrate diligence." *Word to Info Inc. v. Facebook Inc.*, No. 15-CV-03485-WHO, 2016 WL 6276956, at *6 (N.D. Cal. Oct. 27, 2016), aff'd, 700 F. App'x 1007 (Fed. Cir. 2017). But F5 points to none. More importantly, discovery was never stayed as to F5's infringement claims. Indeed, when the Court entertained the idea of staying the entire case following F5's motion to stay Radware's claims, F5 opposed halting discovery in its case, (Dkt. 133 at 1-2) and as a result, a one-way stay was imposed on claims related to Radware's patent, while F5's claims were allowed to proceed as before. (Dkt. 136).

F5 also contends that its inaction is excused because Radware did not produce documents until this year. But F5's motion leaves out the critical fact that the parties agreed to reuse discovery from *Radware I*. (*See, e.g.,* Dkt.120 at 5). Thus, Radware produced tens-of-thousands of pages of technical documentation and source code before F5 even served its initial

---

[3] A first six month period form from November 2016 when Washington court first denied Radware's motions to transfer (Dkt. 54), to the Court ordered transfer on May 2017 in light of *TC Heartland* decision (Dkt. 97); as well as second six-month period from this Court's July 2017 case management conference (Dkt. 122), to January 2018 when F5 finally requested inspection (Dkt. 163-4 at 3-4; Dyer Decl., Ex. A at 5).

infringement contentions in July of 2016. (Dyer Decl. at ¶ 3).

All told, F5 shows no steps taken in 2016 or 2017 to discover what it now contends is the motivation for amendment in 2018, and this absence of diligence is insufficient to show good cause. *See, e.g.*, *KlausTech,* 2017 WL 4808558, at *4.

### b. No Diligence In Seeking Amendment Following Inspection

When F5 finally asked in January of this year to inspect the code, (Dyer Decl., Ex. A at 5) it neither acted expeditiously to review it, nor to request printouts. Radware's counsel coordinated with Radware engineers in Israel and made the source code available for inspection beginning February 2, 2018. (*Id*. at 3). However, F5 waited *three more months* before scheduling an inspection to take place May 22-23.[4] In response to this delay, Radware sent F5 a letter asking F5 to commit to providing any undisclosed infringement theories by June 15, 2018. (Dkt. 163-7). But F5 declined disclosing its theories by that date, and was unable to substantiate its three-month hiatus from February to May. (Dkt. 163-8).

Courts in this district have found a delay of even two months lacks the requisite diligence. *See e.g., GoPro, Inc. v. 360Heros, Inc.*, No. 16-CV-01944-SI, 2017 WL 1278756, at *2 (N.D. Cal. Apr. 6, 2017); *see also Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 789197, at *3 (N.D. Cal. Feb. 26, 2014) (finding a three month delay an inadequate showing of diligence); *see, e.g.,* Dkt. 61. Consequently, F5 should have sought leave to amend by June, and was put on notice of the need for swift disclosure, but showed no sign of progress even three months after the code was available at its request. Indeed, "failure to justify this delay is sufficient to deny its motion." *Cisco Sys., Inc. v. Teleconference Sys., LLC*., No. 09-CV-01550 JSW (NC), 2012 WL 9337627, at *3 (N.D. Cal. June 11, 2012).

Instead, F5 waited *another three months* to ask for a second inspection, and for additional versions of the AppWall source code. (Dyer Decl. Ex. D at 2-3). By this time, the October 1st deadline to seek leave to amend was only four weeks away. (Dkt. 147 at 2). F5 alleges there is

---

[4] Dyer Decl., Ex. A (S. Stark email dated May 1, 2018) at 2-3; Ex. C (S. Stark email dated May 11, 2018) at 1-2.

-13-

good cause because it only recently discovered "nonpublic information about the Accused Instrumentality". *See* Patent L.R. 3-6(c). But that is untrue. Radware produced its last set of technical documents before F5's first inspection in May. (Dyer Decl. at ¶ 4). And more importantly—F5 never identified the portions of the source code it wanted Radware to print. (Dyer Decl. at ¶ 5; *see also* Mot. at 5). Radware expected that, if F5 needed printout of the Alteon and AppWall source code, F5 would have made a request at the conclusion of the May inspection. Yet no request was made. (Dyer Decl. at ¶ 5). Up until F5 asked for a second inspection, Radware rightfully assumed that F5 would not be amending its infringement theories given that it apparently needed no source code.

Not until F5' second inspection in October did F5 identify and request printouts of the code it had inspected *back in May*. (Dyer Decl. at ¶ 6). In this regards, F5's assertion that it only recently discovered information is mostly due to the fact that F5 simply never identified source code to be produced until last month. Indeed, more than half of the source code files that F5 requested prints of in October, were from the code it reviewed back in May (Alteon version 32.0 and AppWall 7.2.1.1.). (Dyer Decl. at ¶ 6; Ex. E). The rest of the printouts are from a later version of the AppWall source code (v. 7.3.1) requested by F5 in September. (*Id.*).

As with its delay in seeking out inspection, F5 accepts no part in the delay leading up to the inspection, or that followed. As explained above, when F5 reached out to Radware in September to request a second inspection, Radware sought to accommodate F5's late request, which coincided with the Jewish high holidays. Radware made the additional AppWall code available for inspection beginning October 1st, and because of the lag caused from the intervening holidays, Radware agreed to extend the deadline for seeking leave to amend. However, even if Radware had been able to make the additional code available for inspection on September 24th (as requested by F5 on September 6th), at best, F5 would have sought leave by October 1st instead of October 29th—a trivial difference given F5's substantial delay beforehand.

Ultimately, F5 shows no diligence in reviewing the code or securing the printouts. Instead, F5 waited four weeks from the deadline to amend infringement contentions to request

inspection of two previously uncaused versions of AppWall (5.8.1 and 7.3.1). (Dyer Decl., Ex. F). Altogether, F5's delay amounts to more than a year-and-a-half of unsubstantiated inaction: a year in seeking inspection, and another six months in seeking amendment. Without the requisite diligence to show good cause, F5's request for leave should be denied.

### 4. Because F5 Has Not Shown Good Cause, There is No Need to Address Prejudice

Because F5 was not diligent in amending its contentions, the Court need not address prejudice. *Radware I*, Dkt. 256 at 7-8 ("the court need not reach the question of prejudice to Radware because F5 has not shown good cause to permit amendment of its invalidity contentions."); *Verinata Health*, 2014 WL 789197, at *3; *see also, O2 Micro*, 467 F.3d at 1368; *Acer, Inc. v. Tech. Props.*, 2010 WL 3618687, at *5 (N.D.Cal. Sept. 10, 2010) ("Because TPL has not demonstrated diligence, 'the inquiry should end.'").

However, if the Court were to address the issue of prejudice, certainly Radware would be prejudiced by F5 belated disclosure. When F5 didn't ask for printouts month after its first review of Radware's, and didn't take action after Radware's letter in May requesting F5 provide its undisclosed infringement theories, Radware reasonably assumed that F5's theories would remain unchanged. But instead, on the last day possible, F5 added new accused products, and newly charted claim limitations, expanding both its theories and the potential for further disputes. Unduly prejudicial amendments of this sort should be denied. *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, No. 12-CV-0630-LHK PSG, 2013 WL 3246094, at *18 (N.D. Cal. June 26, 2013) (finding addition of new products prejudicial because it invites new disputes).

## V. CONCLUSION

Based on the foregoing reasons, Radware respectfully requests that the Court deny F5's Motion for Clarification Regarding Amended Contentions Deadlines Or, In the Alternative, Motion for Leave to Amend Infringement Contentions.

Dated:  November 13, 2018

Respectfully Submitted,

POLSINELLI LLP

By: */s/ Fabio E. Marino*
    Fabio E. Marino

Attorneys for Defendant and
Counterclaim-Plaintiffs
RADWARE, INC. and RADWARE, LTD.